773 So.2d 1206 (2000)
In re ESTATE OF Giorgio BARSANTI, Deceased.
Stefanella Barsanti Patrone, Appellant/Cross-Appellee,
v.
Wayne A. Cypen, as Administrator Ad Litem of the Estate of Giorgio Barsanti, Deceased, Appellee/Cross-Appellant.
Nos. 3D98-702, 3D98-700.
District Court of Appeal of Florida, Third District.
December 6, 2000.
*1207 Mishan, Sloto, Greenberg, Hellinger & Udolf and Carol Cox Berk, Miami, for appellant.
Cypen & Cypen and Myles Cypen, Miami Beach, for appellee.
Before GERSTEN, FLETCHER and SORONDO, JJ.
PER CURIAM.
Stefanella Barsanti Patrone (Patrone) appeals from an order denying her motion to quash service of process. During the pendency of this appeal, she has acknowledged that this issue is moot. Accordingly, we address only the cross-appeal of Wayne A. Cypen, Administrator ad Litem of the Estate of Giorgio Barsanti (Estate), from an order denying a petition for a preliminary injunction in connection with a petition for recovery of possession of property. We reverse.
The facts are as follows: Giorgio Barsanti died in Italy on November 11, 1994, leaving an estate in Florida. The estate is being administered intestate as no will has been admitted to probate in this jurisdiction. At the time of his death, Barsanti left three heirs at law: his niece Patrone; another niece, Attilia Barsanti Gattai; and a surviving brother, Renato Barsanti.
On November 21, 1994, Owen S. Freed was appointed Curator of the Estate and obtained an order from the probate court empowering him to collect and preserve estate assets until a personal representative (P.R.) was appointed. On December 1, 1994, Freed petitioned for his discharge as Curator and informed the court that he had entered the decedent's apartment, changed the locks and secured its contents. Although he did not file a formal inventory, Freed advised the court in the petition about the specific items of personal property that he had found in the apartment. The petition for discharge reflected that Freed had not yet found the decedent's shares of stock in Conakry Corp., N.V. (Conakry), a Netherlands Antilles company. The next day, Freed was discharged as Curator and appointed P.R.
In January 1995, the P.R. submitted an inventory of the estate that included 27,500 shares of Conakry stock, with an unknown value. Thereafter, an amended inventory was filed valuing the Conakry stock at $2,620,000, with a notation that the shares constituted 68.75% of the company's capital. Subsequently, an amended interim accounting was filed also reflecting 27,500 shares of this stock.
In a letter dated December 16, 1997, counsel for Patrone and her husband, Alfredo Patrone, informed the P.R. that the Conakry stock should be removed from the estate, as it was owned by Alfredo Patrone by virtue of a gift from the decedent prior to his death. On December 29, 1997, a correction to amended inventory was executed by the P.R., reflecting that at the time of the decedent's death he owned 16,500 shares of Conakry stock, as represented by bearer certificate numbers 7 and 8, which constituted 68.75% of the company's capital. In addition, the P.R. advised the court and all interested parties that he was no longer in possession and control of these bearer's certificates, which were wrongfully removed from his possession and control or from the estate, and that he was seeking recovery of them.
The P.R. filed a verified "Emergency Amended Petition for Recovery of Possession of Property" seeking entry of a temporary injunction requiring Patrone to deposit into the court registry the two bearer stock certificates representing 16,500 shares of Conakry stock. The P.R. averred in the Petition that he found the stock certificates in the decedent's apartment *1208 shortly after his death,[1] that he was recently unable to locate them and that he believed that they had been converted by Patrone and her husband.
After hearing argument on the Emergency Amended Petition, the court found that the P.R. had failed to establish a clear legal right to the property and that the P.R. had an adequate remedy at law. Accordingly, the demand for preliminary injunction was denied.
The Estate contends that the probate court erred in denying the temporary injunction requested in the P.R.'s petition for recovery of possession of property, even though the probate court agreed at the hearing on the temporary injunction that the decedent's estate faced immediate irreparable harm. Based on the record before us, we find that the probate court abused its discretion in failing to grant the temporary injunction and in finding that the P.R. failed to establish either a clear legal right or an inadequate remedy at law. In addition, we agree with the Estate that the probate judge failed to adhere to established law that the traditional standards controlling the issuance of temporary injunctions in other civil actions do not constrain the probate court in the exercise of its inherent jurisdiction over a decedent's estate.
A temporary injunction is properly granted where: 1) immediate and irreparable harm will otherwise result, 2) the moving party has a clear legal right thereto, 3) the movant has no adequate remedy at law, and 4) where the public interest will not be disserved. See Florida High School Activities Ass'n v. Kartenovich, 749 So.2d 1290 (Fla. 3d DCA 2000); Miami-Dade Cty. v. Church & Tower, Inc., 715 So.2d 1084, 1087 (Fla. 3d DCA 1998); and Cordis Corp. v. Prooslin, 482 So.2d 486, 489-90 (Fla. 3d DCA 1986). First, we agree with the probate court's finding that based on the evidence, immediate and irreparable harm would result if the injunction were not granted. The Estate is subject to immediate and irreparable harm if Alfredo Patrone is recognized as the rightful owner of the bearer certificates because this could subject the assets of the Estate to dissipation.
Second, the Estate has a clear legal right to this relief. This Court held in Estate of Conger v. Conger, 414 So.2d 230, 233 (Fla. 3d DCA 1982): "A circuit court, sitting in its probate capacity, has inherent jurisdiction to monitor the administration of an estate and to take such appropriate action as it may deem necessary to preserve the assets of the estate for the benefit of the ultimate beneficiaries." Furthermore, a probate court has the authority to issue temporary injunctions freezing assets claimed to belong to a decedent's estate, even though ultimate ownership of those assets may be in dispute. See Wise v. Schmidek, 649 So.2d 336, 337 (Fla. 3d DCA 1995); Sanchez v. Solomon, 508 So.2d 1264 (Fla. 3d DCA 1987).
We note that the record reflects that there is no sworn testimony to rebut the P.R.'s verified petition that established a clear legal right pursuant to section 733.607(1), Florida Statutes (1997), to recover possession of estate property, or to support Alfredo Patrone's claim to the stock certificates. Further, the record indicates that since January 1995, the stock has been listed on the estate's inventory as an asset of the decedent, without objection by Patrone.
Third, the Estate has no adequate legal remedy. As the P.R. alleged in his Emergency Amended Petition for Recovery of Possession of Property, it appears that the property has been removed from *1209 the State of Florida. A potential remedy such as a writ of replevin would only reach property in the State. See Advantage Car Rental & Sales, Inc. v. Mitsubishi Motor Sales of Am., Inc., 664 So.2d 46, 47 (Fla. 3d DCA 1995). Thus, this remedy would be inadequate.
Finally, the public interest supports the relief requested by the Estate. We agree with the Estate that there is a strong public interest in marshalling the assets of a decedent's estate. This is evidenced by such cases as Perez v. Lopez, 454 So.2d 777, 778 (Fla. 3d DCA 1984), in which this Court approved the power of the probate court, pending estate administration, to grant injunctions as to assets in which the decedent may have had an interest and as to which the value could be ascertained, including corporate stock. See also Estate of Conger.
The function of the temporary injunction the P.R. requested below was not to determine the ownership of the subject stock but merely to preserve the asset pending the outcome of that determination. This is consistent with the P.R.'s clear legal right under Florida's Probate Code, section 733.607(1) to "take all steps reasonably necessary for the management, protection and preservation of the estate until distribution."
Thus, the lower court erred in denying the temporary injunctive relief requested in the P.R.'s Emergency Amended Petition for Recovery of Property.
Reversed and remanded with directions to grant the temporary injunction requested by the P.R.'s petition.
FLETCHER and SORONDO, JJ., concur.
GERSTEN, J. (dissenting).
I respectfully dissent. The trial court did not abuse its discretion by denying the mandatory injunction requiring the decedent's niece, Stefanella Barsanti Patrone ("Patrone"), to deposit stock certificates into the court registry.
Mandatory injunctions, which compel an affirmative action by the party enjoined, are particularly disfavored by courts and are seldom granted. See Groff G.M.C. Trucks, Inc. v. Driggers, 101 So.2d 58 (Fla. 1st DCA 1958); Washingtonian Apartment Hotel v. Schneider, 75 So.2d 907 (Fla.1954).
As noted by the majority, in order to justify the granting of a temporary mandatory injunction, the party seeking relief must satisfy specific standards and establish a clear legal right to the relief sought. See Florida High School Activities Ass'n v. Kartenovich, 749 So.2d 1290 (Fla. 3d DCA 2000). Only where irreparable harm will result and where the movant is without an adequate remedy at law, will relief by injunction be proper. See Miami-Dade County v. Church & Tower, Inc., 715 So.2d 1084 (Fla. 3d DCA 1998).
In reviewing a trial court's decision to grant, deny, dissolve, or modify an injunction, it is well settled that such decisions will not be disturbed on appeal absent a showing of a clear abuse of discretion. See Duryea v. Slater, 677 So.2d 79 (Fla. 2d DCA 1996); Wise v. Schmidek, 649 So.2d 336 (Fla. 3d DCA 1995). I do not believe such a showing has been made in the present case.
The probate court's finding that the personal representative had no clear right to the stock was not "clearly erroneous." It is undisputed that the Conakry stock bearer certificates are in the possession of Mrs. Patrone's husband in Venezuela. Thus Mrs. Patrone's husband, as possessor, is presumed to be the owner and rightful holder. See § 671.201(20), Fla. Stat. (1999).
There was no substantial or corroborated evidence that the stock certificates were not in the possession of Mrs. Patrone's husband at the time of the decedent's death. Further, evidence showed that the personal representative would have known *1210 about the existence of the stock based upon his former legal representation of the corporation. It is obvious the trial court took this into account, as well as the facts discussed below, in finding that the personal representative's testimony was insufficient to establish or to rebut the presumption that the bearer of the certificates is the rightful owner.
Significantly, the facts reveal that although the personal representative stated that he found certain stock certificates and papers in the decedent's apartment, he did not at that time specify that the shares of Conakry stock were included. In the initial inventories filed by the personal representative, the number of Conarky shares was misstated as being 27,500, rather than the correct amount of 16,500 shares. The personal representative had no explanation concerning how the stock certificates could possibly have ended up in the hands of Mrs. Patrone's husband in Venezuela. In fact, after the personal representative changed the apartment locks and secured its contents, his Petition For Discharge stated that the shares of Conakry stock were not found in the decedent's apartment.
Furthermore, the probate court's finding that the personal representative had an adequate remedy at law was correct and not clearly erroneous. Ultimately, if Patrone wrongfully converted the stock from the decedent's estate, the market value of the stock can be ascertained.[2] Since any damages to the estate can be ascertained and a subsequent judgment obtained, there can be no irreparable harm and thus the trial court correctly denied injunctive relief. See In re Estate of Yerex, 651 So.2d 220 (Fla. 4th DCA 1995); Morris v. Ricks, 573 So.2d 1029 (Fla. 2d DCA 1991); Oxford International Bank and Trust, Ltd. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 374 So.2d 54 (Fla. 3d DCA 1979).
In conclusion, I would find that the right to a mandatory injunction is not "clear and free from reasonable doubt," see Groff G.M.C. Trucks, Inc. v. Driggers, 101 So.2d at 58, and that the personal representative failed to satisfy the required factors to support the requested injunctive relief, see Florida High School Activities Ass'n v. Kartenovich, 749 So.2d at 1290. Because the probate court's refusal to issue the temporary injunction was not a clear abuse of the court's discretion, I would affirm the order below. See Wise v. Schmidek, 649 So.2d at 336.
NOTES
[1] Attached as Exhibit D to the Emergency Petition is a demand letter for treble damages from the P.R.'s attorney to the Patrones, which further states that it was actually Stefanella Patrone who found the two bearer stock certificates in the bedroom of the decedent's Key Biscayne apartment and that the P.R., among others, was present when these certificates were found.
[2] This is a simple and non-stochastic method.